In the Matter of TERESA V. FARRELL, as Committee of the Person and Estate of ANNA FARRELL, an Incompetent Person. LUCY C. FARRELL, Appellant; THOMAS F. COHALAN, as Special Guardian for ANNA FARRELL, an Incompetent Person, et al., Respondents.

Argued April 21, 1948; decided July 16, 1948.

*Emmet L. Holbrook* for appellant. I. There was no gift of the money involved. (*Matter of Van Alstyne,* 207 N. Y. 298; *Matter of Green,* 247 App. Div. 540; *Ridden* v. *Thrall,* 125 N. Y. 572.) II. Appellant's title to the East River Savings Bank account became complete and absolute by delivery to her by her mother of the passbook. (*Matter of Totten,* 179 N. Y. 112; *Matter of Rosso,* 146 Misc. 746; *Davlin* v. *Title Guar. & Trust Co.,* 229 App. Div. 269.) III. In any event, her mother's delivery of all three bankbooks to appellant was sufficient to constitute "gifts" to appellant. (*Mutual Life Ins. Co.* v. *Holley,* 280 N. Y. 330; *Baxter* v. *Gillen,* 179 App. Div. 902; *Ridden* v. *Thrall,* 125 N. Y. 572; *Donahue* v. *New York Life Ins. Co.,* 234 App. Div. 241.) IV. Appellant is entitled to the proceeds of the savings bank accounts in payment or restitution of the moneys held in trust for her. (*Independent Coal Co.* v. *United States,* 274 U. S. 640; *Lucia Mining Co.* v. *Evans,* 146 App. Div. 416; *Newton* v. *Porter,* 69 N. Y. 133.)

*Teresa V. Farrell,* in person, as committee, respondent.

*Thomas F. Cohalan,* in person, as special guardian, respondent. The order appealed from should be affirmed in all respects.

FULD, J. In April of 1945, Mrs. Anna Farrell was declared an incompetent. At that time, she had money in three bank accounts: two were in her own name, one in the Public National Bank and Trust Company (amounting to about $990), the other in the Greenwich Savings Bank (amounting to $9); the third, in the East River Savings Bank (amounting to about $1,679), was in her name " in trust for daughter Lucy Farrell." The latter, one of several children of the incompetent, claimed that the money in those bank accounts belonged to her by reason of the fact that she had, over the years, turned those funds, as well as additional money, over to her mother for safekeeping.

The committee for the incompetent, acknowledging that the claim ".is justly due to the claimant ", petitioned the Supreme

Court for an order " authorizing  *  *  * and directing " her, as committee, " forthwith to pay and turn over " all the moneys on deposit in the banks. The court-appointed special guardian asserts in this court that, while it is his belief that " morally she [claimant] is entitled to receive the deposits in the name of the incompetent," he considers the evidence not sufficiently strong to support her claim " in view of the fact that the incompetent is unable to answer it."

The referee, designated to hear and report, denied the claim and that determination, confirmed by the court at Special Term, was affirmed by the Appellate Division, although two justices dissented, voting to reverse and grant claimant's application in full.

Little purpose is to be served by extended discussion of the facts or lengthy consideration of the law. The case is an unusual one, and decision herein will be limited to its peculiar facts. Suffice it to note that in 1941 Mrs. Farrell opened the account in the East River Savings Bank " in trust for daughter Lucy Farrell ", and that two years later, in September, 1943, she delivered that passbook to Lucy.

Under the circumstances of this case — peculiar as we have characterized them — delivery of that passbook transformed the tentative trust created by the deposit into an irrevocable trust. (See, e.g., *Imperatrice* v. *Imperatrice,* 298 N. Y. 549; *Matter of Totten,* 179 N. Y. 112, 125–126.) Accordingly, there must be a reversal of the determination below insofar as it affects the moneys on deposit in the East River Savings Bank.

The order of the Appellate Division should be modified by directing entry of an order granting application of the committee to the extent of deciding that the deposit in the East River Savings Bank, bearing account No. 177328 and entitled " Mrs. Anna Farrell in trust for daughter Lucy Farrell ", constitutes an irrevocable trust in favor of Lucy Farrell terminating upon the death of Anna Farrell, and, as so modified, affirmed, without costs.

The order should be modified in accordance with the foregoing opinion, and, as so modified, affirmed, without costs.

LEWIS, J. (dissenting). I am unable to concur with the decision about to be made that, as a matter of law, certain money

deposited by Anna Farrell in the East River Savings Bank in trust for her daughter Lucy Farrell was by delivery of the passbook evidencing that account transformed from a tentative trust into an irrevocable trust.

The " delivery " of the passbook to Lucy Farrell is a decisive factor in this case. Accordingly, I review briefly the evidence bearing upon that delivery: Prior to Anna Farrell's admission to Bellevue Hospital, she delivered to her daughter Lucy a *sealed* envelope which later was discovered to contain insurance policies, bills, receipts and several bankbooks of which one covered the East River Savings Bank deposit here involved. As to that delivery another daughter, Teresa Farrell — testifying for the claimant Lucy Farrell on direct examination — stated: " my mother handed my sister Lucy an envelope that had been sealed and she told her to hold it *for her."* Upon this evidence — which is the only testimony descriptive of the delivery — Special Term confirmed the finding of a referee that merely turning over the envelope to Lucy for safekeeping was not sufficient delivery. Affirmance at the Appellate Division followed.

It is my opinion that — in view of the testimony that the sealed envelope was turned over to Lucy to be held by her for her mother, Anna Farrell — we cannot say, as a matter of law, that an irrevocable trust was created.

The following statement, per ANDREWS, J. (the elder), of a fundamental principle of law has guided my thinking — " To constitute a trust there must be either an explicit declaration of trust, or circumstances which show beyond reasonable doubt that a trust was intended to be created. It would introduce a dangerous instability of titles, if anything less was required, or if a voluntary trust *inter vivos* could be established in the absence of express words, by circumstances capable of another construction, or consistent with a different intention." (*Beaver* v. *Beaver,* 117 N. Y. 421, 428.)

Rules regarding the effect to be given to savings bank trusts — commonly known as " Totten trusts " — were enunciated by this court in *Matter of Totten* (179 N. Y. 112, 125–126): " A deposit by one person of his own money, in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is

a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the pass book or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor.''

Relying on this language, a majority of the court holds that a delivery, sufficient in law to transform a tentative trust into an irrevocable trust, occurs when a bankbook is merely placed in the hands of the beneficiary for the purpose of safekeeping with an intent, clearly expressed, that the papers are to be held *for the depositor*. Such is not my understanding of the delivery intended by the rule of *Matter of Totten* (*supra*). Throughout that case and cases subsequently decided by this court, it is repeatedly pointed out that the decisive factor in determining whether a savings bank trust is irrevocable is the *intention of the depositor*. An unqualified, unconditional delivery may well indicate such an intention but a delivery for the purpose of safekeeping — a mere custodianship — not only fails to indicate an intention to make the trust irrevocable but in reality indicates a contrary intention. I think it is carrying the language of the *Totten* case too far to say that delivery such as the record at hand discloses, unaccompanied by an expressed intention to make a gift of the bank account — in fact, accompanied by an expressed intention that the delivery is for the limited purpose of safekeeping the passbook — is sufficient to constitute an irrevocable trust of the funds involved. I am influenced by the statement in the case last above cited that a savings bank trust '' is a tentative trust merely, revocable at will, until the depositor  *  *  *  *completes the gift* in his lifetime by some unequivocal act or declaration, such as delivery of the pass book ''. It should be noted that the court speaks of *completing* the gift by delivery of the passbook. This recognizes and assumes, it seems to me, that the other factors essential to the completion of a gift — including, *intention* to make a gift — are necessary and already effective — the delivery merely being the final step in the process.

However, it is unnecessary to pursue further this analysis of the language of the *Totten* case (*supra*) inasmuch as an interpretation of that ruling was made and applied by this court in *Matthews* v. *Brooklyn Sav. Bank* (208 N. Y. 508) on facts similar to those here involved. In that case Mary Kelly deposited a sum of money in the Brooklyn Savings Bank, the account bearing the title " ' in account with Mary Kelly in trust for Margaret Matthews (cousin)' ". On that day Mary Kelly delivered the passbook to Margaret Matthews — the beneficiary — " for safekeeping ". Margaret Matthews claimed an irrevocable trust was created by such delivery. This court, however, stated (pp. 510–511): " The deposit was in form a tentative and revocable trust. The acts of the depositor which are or can be invoked by the respondent [the beneficiary] as making it irrevocable or a completed gift, as a matter of law, are, stated generally and yet accurately, permitting the respondent to know of the deposit and its nature, and delivering the pass book to her *for safekeeping. Those acts considered separately or jointly do not conclusively establish either the one or the other.* (*Hemmerich* v. *Union Dime Savings Inst.,* 205 N. Y. 366; *Matter of Totten,* 179 N. Y. 112.) The intention of the depositor and whether or not it was effectuated were questions determinable by the Special Term, from those acts and the other facts found." (Emphasis supplied.)

Nor do I find in *Imperatrice* v. *Imperatrice* (298 N. Y. 549, decided herewith) cited by the majority herein — anything which varies the rule of the *Matthews* case (*supra*). In the *Imperatrice* case the complaint alleged that delivery of the passbook by the depositor to his daughter as beneficiary was accompanied by the statement that the funds were hers. It also alleged that " the defendant, Antonio Imperatrice, without any reservation to himself, made a present and gift to the plaintiff of said savings account by giving and delivering physical possession to the plaintiff of the deposit book for said savings account and expressly stating that the funds  *  *  *  pass to her upon the death of the defendant, Antonio Imperatrice."

I am thus lead to conclude in the case at bar that delivery by the depositor to the appellant of a sealed envelope with express directions that the envelope was to be held by the appellant *for the depositor,* is sufficient evidence to support the finding

by Special Term — affirmed at the Appellate Division — that an irrevocable trust was not intended or created by the depositor of the funds represented by the bankbook.

Accordingly, I dissent and vote for affirmance.

CONWAY, DESMOND and DYE, JJ., concur with FULD, J.; LEWIS, J., dissents in opinion in which LOUGHRAN, Ch. J., and THACHER, J., concur.

Ordered accordingly.