Estate of Harry Schneider, Deceased, Molly Schneider, Administratrix, and Molly Schneider, et al.,[1] Petitioners, *v.* Commissioner of Internal Revenue, Respondent.[2]

Docket Nos. 54289–54296. Filed February 25, 1958.

*Solomon M. Lowenbraun, Esq.*, and *Philip Leavitt, Esq.*, for the petitioners.

*Charles M. Greenspan, Esq.*, and *John A. Dunkel, Esq.*, for the respondent.

---

[1] Proceedings of the following petitioners were consolidated for trial: Molly Schneider, Docket No. 54290; Katherine Schneider, Docket No. 54291; Ruth Schneider, Docket No. 54292; Manny Schneider, Docket No. 54293; Leo Schneider, Docket No. 54294; Jules Schneider, Docket No. 54295; Catherine Smith, Docket No. 54296.

[2] In Docket Nos. 54290, 54291, and 54293, incidental to the determination of the liability of the petitioners as transferees, a question is presented as to whether the payment of the proceeds of certain insurance policies on the life of the decedent to the petitioners constituted a transfer of assets by the decedent within the meaning of the term "transferee," as used in section 311, I. R. C. 1939. This question is presently before the Supreme Court of the United States. Accordingly, the present findings of fact and opinion is limited to the disposition of Docket Nos. 54289, 54292, 54294, 54295, and 54296. The three cases involving the insurance question will be the subject of a subsequent opinion.

942

944

OPINION.

Van Fossan, *Judge:* The first issue is that of fraud. Respondent urges that the decedent filed a false and fraudulent return for each of the years 1944 through 1950. The establishment of fraud in each particular year is essential to further consideration of the case for that year. If there was no fraud, the statute of limitations has run against any deficiency which may exist.[3]

---

[3] Internal Revenue Code of 1939.

SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION.

Except as provided in section 276—

(a) GENERAL RULE.—The amount of income taxes imposed by this chapter shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period.

SEC. 276. SAME—EXCEPTIONS.

(a) FALSE RETURN OR NO RETURN.—In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment at any time.

To establish fraud by direct proof of intention is seldom possible. Usually it must be gleaned from the several transactions in question and the conduct of the taxpayer relative thereto. *M. Rea Gano*, 19 B. T. A. 518, 532.

Respondent reconstructed decedent's income for the years in question by the net worth method. A net worth statement introduced and supported by the respondent at the trial differed from the statement attached to the notice of deficiency. We accept the later computation as superseding the original determination.

All items in the respondent's present calculation were stipulated or determined from exhibits in evidence, with the exception of the opening and closing balances of decedent's checking account and several personal expenditures. The opening balance was estimated from a transcript of the account beginning July 29, 1944. The closing balance was determined from working papers which reconciled the opening and closing balances. Miscellaneous personal expenditures were estimated.

Petitioners urge that decedent's personal and nondeductible expenses were reflected in his returns and should not be added to net income as reported. However, estimates of personal expenses made by the respondent when computing decedent's income were inclusive of, rather than additional to, amounts reflected in decedent's returns.

Decedent's net income, as computed by respondent, exceeded net income as reported for each of the tax years in question. During the years 1944 through 1947 this discrepancy was particularly large.

Petitioners urge that apparent increases in net worth were due not to unreported income but rather to the transfer of assets held by decedent prior to 1944. Requests by the respondent for information as to the nature and amount of these prior-held assets elicited no response from petitioners, nor has any evidence been introduced tending to confirm their existence. Had the decedent possessed such assets and revealed the amount and nature thereof he might have disclosed the savings banks accounts or otherwise convicted himself of fraudulent conduct in failing to file returns in the years when he made no return.

Other facts cast further doubt upon the tenability of petitioner's contentions. In keeping with decedent's attitude in reporting prior to 1943, his annual net income could not have exceeded $3,500. In 1943 his reported net income was $5,398. Decedent carried six life insurance policies. In 1932 and some subsequent years premiums amounted to $1,634.34 annually, such sum being more than half of his reported net income. Moreover, between 1939 and 1942 he borrowed $10,266 against these life insurance policies.

Decedent's professional activities were presumptively recorded on patient cards. However, the admissions records of Beth Israel Hospital, which he patronized exclusively, establish that the number of his patients admitted to the hospital in 1946 and 1947 greatly exceeded the number recorded on his patient cards for those years. Examination of the 27 claims paid decedent by a prepayment medical care plan throughout 1949 and 1950 reveals that in 17 cases decedent's fee listed on the claims exceeded the fee recorded on his patient cards. In some instances the differential amounted to $50. Clearly, the patient cards do not accurately reflect decedent's earnings or income.

We conclude, on the whole record, that respondent has not only negatived the existence of any substantial assets held by decedent prior to January 1, 1944, but also has shown a source from which the net worth increases might well have flowed, i. e., unrecorded professional earnings. In the absence of contrary evidence we accept as correct respondent's revised net worth computations. *Holland* v. *United States*, 348 U. S. 121 (1954).

The decedent repeatedly informed internal revenue agents, auditing his income tax returns for 1945, 1946, and 1947, that he had no bank account other than a checking account at the Corn Exchange Bank and Trust Company and that this account represented all his taxable income. This statement was absolutely and knowingly false. In actuality, he had unrevealed cash in 37 different savings banks totaling $120,017.53 on December 31, 1947.

Eighty-three of the 84 deposit slips used by decedent to make deposits in his checking account in the Corn Exchange Bank and Trust Company between January 4 and December 26, 1947, show deposits of checks only. In the same period he made 71 deposits in savings accounts, only 4 of which contained checks, the remaining 67 being in currency. No explanation is offered for this segregation of checks and currency.

During 1944, 1945, 1946, and 1947 Schneider deposited large sums in 37 savings accounts in 37 different savings banks, in trust for various individuals. Such accounts are commonly known as Totten trusts. Totten trusts are tentative and revocable at will until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as permanent delivery of the passbook or notice to the beneficiary. If the trustor dies without revocation the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor. *In re Totten*, 179 N. Y. 112, 71 N. E. 748 (1904).

Petitioners urge that decedent delivered the passbooks of these Totten trust accounts to Catherine Smith and Jules Schneider, and thereby made the trusts irrevocable. Catherine Smith testified that

after each of the 11 trusts was established for her, Schneider gave her the passbook and that she at all times retained possession of it, keeping it under lock and key. She further stated that she made no withdrawals from these accounts. As a matter of banking practice in New York she, as a beneficiary, could not have made withdrawals during decedent's lifetime.

Among an aggregate of 11 withdrawals, totaling $13,767.66, from the various trust accounts, 2 withdrawals—1 of $1,000 and another of $3,600—were made, prior to decedent's death, from separate trust accounts established by decedent for Catherine Smith. Notation of these withdrawals was entered in the passbooks. The inference is inescapable that the withdrawals were made by decedent and that he must have had possession of the passbooks at the time of the withdrawals. This inference is in direct conflict with Catherine Smith's testimony; therefore, we find it impossible to give credence to her testimony as to decedent's action and the ownership of the accounts. We conclude that by the very act of making withdrawals decedent demonstrated that he regarded the trusts as still owned by him and revocable by him at any time. Attention is also called to the corroborating fact that the administratrix, in preparing the estate tax return, enumerated the savings bank accounts and stated that—

at the time of decedent's death he had left certain funds in trust under Totten trusts for the beneficiaries hereinafter named and in the savings banks hereinafter named, all located in the City of New York and in the following amounts.

In October 1950 decedent turned over to Jules Schneider 26 savings bank passbooks. These books represented Totten trust accounts in trust for various relatives. Decedent instructed Jules that he should "keep possession" of the passbooks and that Molly Schneider should not get possession of them.

It has been held in New York that delivery of the passbook of a Totten trust account to the beneficiary is a method by which the settlor may display an intention to make the trust irrevocable. *In re Farrell*, 298 N. Y. 129, 81 N. E. 2d 51 (1948). The *Farrell* case was specifically limited by the court in scope to its peculiar circumstances. It has also been held that transfer of the passbook for the purpose of safekeeping does not evidence an intent to make the trusts irrevocable. *In re Slobiansky's Estate*, 152 Misc. 232, 273 N. Y. S. 869 (1934). Decedent's act in this case portrays only an intent that Jules should have the passbooks for safekeeping.

The contention that there was an absolute transfer and that decedent's action made the trusts irrevocable would be more persuasive had he given the passbooks to each of the respective beneficiaries rather than giving all the books to one beneficiary, obviously merely as a

custodian. We hold that these 26 trust accounts, like the 11 accounts in trust for Catherine Smith, were revocable up to the time of decedent's death, at which time they passed to their respective beneficiaries.

The interest from the trust accounts was substantial. In 1948 it amounted to $2,070.38; in 1949, $2,517.90; and in 1950, $2,623.70. Since the trusts were revocable, this interest earned was taxable to decedent. *Helvering* v. *Clifford*, 309 U. S. 331 (1940) ; Regs. 111, sec. 29.22(a)-21. It was not reported on his returns.

The conclusion to be drawn from the foregoing and other facts of record is that decedent, at all times from 1944 through 1950, entertained a continuing willful intent to defraud the Government of tax revenues. During 1944, 1945, 1946, and 1947 he failed to report large amounts of income received. No valid explanation or excuse is suggested. This income was deposited in savings accounts in trust for others. Apparently in order to conceal the existence of these funds, he omitted patients from his records, recorded smaller fees than those actually charged, failed to disclose the existence of the 37 savings accounts when questioned by internal revenue agents, and omitted from his returns for 1948, 1949, and 1950 interest income earned by these funds. The fact that the 37 savings accounts were maintained in 37 different and widely scattered savings banks gives rise to an inference, if not to a conclusive presumption, that Schneider hoped by so scattering the accounts to conceal them from the Government. This strategy almost succeeded since it was not until after Schneider's death, when the estate tax return was filed, that the existence of the 37 trust accounts was learned by the Government. These vital facts cannot be attributed to ignorance, or negligible or unintentional error. They evidence a calculated intention to defraud, supported by deliberate concealment and other conduct consistent only with fraud. Such evidence is clear and convincing.

We hold that the income tax returns of Harry Schneider were false and fraudulent for the years 1944, 1945, 1946, 1947, 1948, 1949, and 1950. *M. Rea Gano, supra* at 533; *Arlette Coat Co.*, 14 T. C. 751, 756 (1950). We further hold that the respondent did not err in determining additions to tax under section 293 (b), I. R. C. 1939.[4]

Since the returns were false and fraudulent for each of the tax years concerned, the statute of limitations is no bar to consideration of other issues involved.

The second question presented is whether respondent, as a basis for determining transferee liability, correctly determined deficiencies

---

[4] SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY.

(b) FRAUD.—If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612 (d) (2).

in Schneider's income tax returns for each of the years 1944 through 1950.

In the absence of countervailing evidence we have accepted respondent's net worth computations based on stipulated facts and figures. Therefore, we hold that the deficiencies and additions to tax in Docket Nos. 54292, 54294, 54295, and 54296, which served as the basis for transferee liability, are correct as now claimed by respondent for the years 1944, 1945, 1946, and 1947.

Since the respondent has not claimed increased liabilities in the transferee proceedings in Docket Nos. 54292, 54294, 54295, and 54296 for 1948 and 1950 as to such petitioners, the liabilities are sustained as originally determined and assessed. Sec. 272 (e), I. R. C. 1939.[5] The liability determined for 1949 in Docket Nos. 54292, 54294, 54295, and 54296 should be reduced to reflect the decrease in net worth for that year.

The respondent filed an amended answer in Docket No. 54289 in which he claimed increased deficiencies for 1948 and 1949 and a lesser deficiency for 1950. This determination is based not upon net worth but rather upon the specific omissions method. The burden of proving this new matter rested upon the respondent. *Sheldon Tauber*, 24 T. C. 179 (1955); Rule 32, Tax Court Rules of Practice (Jan. 15, 1957).[6]

In his amended answer respondent reconstructed decedent's income for 1948, 1949, and 1950 by adding interest income and professional income where omitted. Professional income was calculated by multiplying the number of decedent's patients admitted to Beth Israel Hospital each year by an average fee of $100 and the number of gynecological consultations by an average fee of $10.

The summaries of hospital admissions records include instances in which the same patient was admitted for labor or childbirth twice within 30 days. It is evident that a delivery could not have taken place upon each such admission. Thus, it cannot be assumed that decedent received a delivery fee for every hospital patient.

The respondent has submitted no evidence to substantiate the use of $10 as an average fee for gynecological consultations. We have found the fee for such consultations varied from $3 to $5 unless an

---

[5] SEC. 272. PROCEDURE IN GENERAL.

(e) INCREASE OF DEFICIENCY AFTER NOTICE MAILED.—The Board shall have jurisdiction to redetermine the correct amount of the deficiency even if the amount so redetermined is greater than the amount of the deficiency, notice of which has been mailed to the taxpayer, and to determine whether any penalty, additional amount or addition to the tax should be assessed—if claim therefor is asserted by the Commissioner at or before the hearing or a rehearing.

[6] RULE 32. BURDEN OF PROOF.

The burden of proof shall be upon the petitioner, except as otherwise provided by statute, and except that in respect of any new matter pleaded in his answer, it shall be upon the respondent.

operation was involved. Moreover, any gynecological operations performed would be reflected in the figure for total hospital admissions and would be included in the income as reconstructed.

Clearly, these assumptions, basic to respondent's computations, are not proven justified. We hold that respondent has not sustained his burden of proof as to new matter in the amended answer.

Likewise, petitioner has failed to carry its burden of proving respondent's original determination to be in error.

In Docket No. 54289, therefore, deficiencies and additions to tax for 1948 and 1950 are sustained as originally determined, while the deficiency and addition to tax for 1949 should be recomputed to reflect the conceded decrease in net worth for that year.

We now turn to the third issue presently before us—that is, whether the petitioners Ruth Schneider, Leo Schneider, Jules Schneider, and Catherine Smith were liable as transferees of the assets of Harry Schneider.

Ruth Schneider, Leo Schneider, Jules Schneider, and Catherine Smith were beneficiaries of Totten trusts which passed to them upon decedent's death. Molly Schneider, Katherine Schneider, and Manny Schneider were beneficiaries of life insurance policies on the life of decedent, the proceeds of which were paid to them after decedent's death.

The respondent has the burden of proving transferee liability. Sec. 1119, I. R. C. 1939.[7] This he may do at law or in equity.[8] When the respondent sustains his burden of proof the transferee is retroactively liable for the transferor's taxes in the year of transfer and prior years, including penalties and interest, to the extent of the assets received from the transferor, even though the transferor's tax liability was unknown at the time of the transfer. *Leon Papineau*, 28 T. C. 54 (1957).

---

[7] SEC. 1119. PROVISIONS OF SPECIAL APPLICATION TO TRANSFEREES.

(a) BURDEN OF PROOF.—In proceedings before the Tax Court the burden of proof shall be upon the Commissioner to show that a petitioner is liable as a transferee of property of a taxpayer, but not to show that the taxpayer was liable for the tax.

[8] SEC. 311. TRANSFERRED ASSETS.

(a) METHOD OF COLLECTION.—The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds) :

(1) TRANSFEREES.—The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter.

\*          \*          \*          \*          \*          \*          \*

(f) DEFINITION OF "TRANSFEREE."—As used in this section, the term "transferee" includes heir, legatee, devisee, and distributee.

The New York Debtor and Creditor Law provides as follows:

Sec. 273. Conveyances by insolvent

Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

The evidence shows that the transfers to the petitioners were purely voluntary and totally lacking in consideration.

At the time of decedent's death his adjusted net worth was $185,352.50, exclusive of back taxes. Simultaneously, considering only the years 1944, 1945, 1946, and 1947, he owed deficiencies and additions to tax totaling $114,479.79. Upon his death $135,587.71 in savings account trusts and $39,312.44 in life insurance proceeds passed to the above-named petitioners, thus rendering the decedent clearly insolvent.

Petitioners argue that the transfers did not render decedent insolvent, first, because there was no fraudulent intent on the part of decedent and thus there should be no additions to tax assessed and due under section 293 (b), *supra;* and second, that transfer of the Totten trust accounts did not occur at the time of decedent's death but rather when decedent turned over the passbooks to Catherine Smith and Jules Schneider.

We have already determined that the returns of decedent for the years 1944 through 1950 were false and fraudulent; that some part of each of the deficiencies was due to fraud with intent to evade tax; and that the respondent did not err in determining additions to tax under section 293 (b). We have further determined that the Totten trust accounts were revocable until decedent's death and passed to the beneficiaries at that time.

Petitioners cite *In re Smith's Estate,* 177 Misc. 601, 31 N. Y. S. 2d 603 (1941), to support the proposition that Totten trust accounts cannot be set aside to satisfy either the debt or tax liabilities of settlor. In that case it was held that the value of a Totten trust account was not required to be included in the valuation of the settlor's estate for New York estate tax purposes. However, in the *Smith* case and cases cited therein the trust became irrevocable during the settlor's lifetime. In the instant case the trusts did not become irrevocable until decedent's death.

We therefore conclude that the transfer of the trust accounts took place at a time when decedent was indebted to the United States for taxes, which transfer rendered him insolvent, and was in fraud of the United States Government. We further hold that petitioners

Ruth Schneider, Leo Schneider, Jules Schneider, and Catherine Smith are liable as transferees to the extent of trust assets received. *Leon Papineau, supra.*

> *Decisions in Docket Nos. 54289, 54292, 54294, 54295, 54296 will be entered under Rule 50.*