CATHERINE CHACON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Chacon
Docket No. 5514-91
United States Tax Court
T.C. Memo 1992-632; 1992 Tax Ct. Memo LEXIS 663; 64 T.C.M. (CCH) 1169; October 27, 1992, Filed *663 Decision will be entered under Rule 155. Catherine Chacon, pro se. For Respondent: Leonard T. Provenzale. POWELL
POWELL
MEMORANDUM OPINION POWELL, Special Trial Judge: By a notice of deficiency dated February 22, 1991, respondent determined a deficiency and an addition to tax for petitioner's 1987 taxable year under section 6653(a)(1)(A) [1] in the respective amounts of $ 1,598 and $ 152.85. Respondent also determined an addition to tax under section 6653(a)(1)(B) in the amount of 50 percent of the interest due on the total underpayment. Petitioner timely filed a petition with this Court. In the Amendment to Answer, respondent seeks an increased deficiency in the amount of $ 1,078 resulting from the proposed disallowance of $ 8,307 rental loss claimed on the 1987 return and increased additions to tax under section 6653(a)(1)(A) and (B). Petitioner resided in Sunrise, Florida, when the petition was filed. *664 The facts may be summarized as follows: Prior to 1983, petitioner's mother, Rose Virzi, moved to Florida, and purchased a two-bedroom condominium at 9440 Sunrise Lakes Boulevard, Sunrise, Florida. Mrs. Virzi paid cash for the condominium. During 1987, she received Social Security that she spent as her own and was covered by Medicare. She paid the maintenance fees on her condominium. In 1983, petitioner and her son, Raul, also moved to Sunrise. Raul was born March 24, 1972. Petitioner and Raul initially stayed with Rose Virzi. In 1984, petitioner purchased a two-bedroom townhouse condominium at 10016 Winding Lake Road, Sunrise, which is approximately three blocks from her mother's building. Petitioner moved her furniture into the townhouse, and she and Raul lived there for several years. Petitioner's mother was not in good health, and petitioner spent increasingly more time at her mother's residence. During 1987, petitioner spent every night at her mother's residence. Petitioner was evasive as to where Raul spent the night. During this period, petitioner kept the telephone at 10016 Winding Lake Road in her name and she continued to receive mail at that address. She did *665 not move any furniture or other personal effects (other than some clothing) to her mother's condominium and she went by her townhouse frequently. When asked the reason that, if she lived with her mother, petitioner kept the townhouse, she responded that she did "not want to be with my mother all the time". In September 1987, petitioner allegedly signed a 4-month lease of the townhouse with her niece, Michele Varrone, for $ 300 per month. She had never advertised the apartment for lease because she did not "want to put just anybody in there". There is nothing in the record to indicate whether the amount specified in the lease was a fair rental for the property. On October 25, 1987, petitioner reported that the townhouse on Winding Lane Road had been burglarized. She listed the items stolen as a motorcycle helmet, a pair of motorcycle boots, tennis racquets, a hair dryer, a stereo and a VCR. The police report states that petitioner told the police that the townhouse was her residence. There is no mention in the report that Michele Varrone had leased the property, nor is there an indication that any items reported stolen belonged to Ms. Varrone. Petitioner is a registered nurse *666 and was employed by a doctor in Hollywood, Florida, which is close to Sunrise. During 1987, petitioner supported Raul and paid her mother $ 1,200 to look after Raul when petitioner was at work. On her 1987 Federal income tax return, petitioner claimed a rental loss in the amount of $ 8,307 on the property at Winding Lake Road. She reported gross rent of $ 1,200 and deductions as follows: Insurance
$   317
Mortgage interest
4,248
Supplies
74
Taxes
248
Maintenance
809
Appliance contract
105
Depreciation
3,706
Petitioner also claimed exemptions for Raul and Mrs. Virzi, a miscellaneous deduction for tax return preparation ($ 385), work clothes ($ 1,213), child care credit ($ 552) and claimed head of household filing status. Petitioner did not meet with respondent's agent during the examination of her return. Respondent disallowed the deductions, exemptions, and the credit and changed her filing status to that of a single person. As noted above, in the amended answer, respondent raises the deductibility of the rental loss. Before we discuss these issues, it is important to note that there are two different burdens of proof involved in this case. First, with respect *667 to adjustments made by respondent in the notice of deficiency, the burden of proving that respondent's determinations are erroneous is on petitioner. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). With respect to the increased deficiency asserted in the amended answer, relating to the rental loss deduction, the burden is on respondent. Rule 142(a); Estate of Schneider v. Commissioner, 29 T.C. 940, 956 (1958). With these principles in mind, we turn to the issues raised. 1. Rental Loss
This issue takes us into the maze of section 280A. Section 280A(a) provides that "in the case of a taxpayer who is an individual * * * no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence". A dwelling includes a house, apartment, or condominium. Sec. 280A(f)(1)(A). If a taxpayer uses a dwelling unit more than 14 days or 10 percent of the number of days that the unit is rented at a fair rental value during the year, whichever is greater, for "personal purposes", such use is use as a residence *668 for the purposes of section 280A(a). Sec. 280A(d)(1). Furthermore, in determining whether the 10-percent limitation is met "a unit shall not be treated as rented at a fair rental for any day for which it is used for personal purposes" by a taxpayer. Sec. 280A(d)(1). If section 280A(a) applies to a taxpayer, deductions for interest and taxes are still allowed. Sec. 280A(b). Petitioner takes the position that, since she did not spend a night in the townhouse during 1987, there was no "personal use" by her during the year within the meaning of section 280A(d)(1). Petitioner's reading of the phrase "personal use" is too narrow. There is no requirement in the statute that a taxpayer spend the night in the dwelling for the use to be considered personal. Indeed, this is implicit from the flush language of section 280A(d)(1), which indicates that property may be put to "personal use" even when it is rented for fair market value. Similarly, under section 280A(d)(2), a taxpayer is deemed to have used a dwelling for personal purposes for a given day if it was used for personal purposes "for any part of such day". As we view the record before us, it appears that, while petitioner may *669 have slept at her mother's place as an accommodation to her mother, petitioner's residence was her townhouse. Petitioner and her son kept their personal property in her town house, and it appears from petitioner's testimony and from the nature of the items that were reported stolen that she and her son used the property quite frequently, if not on a daily basis. Petitioner listed 10016 Winding Lake Road as her address on her checking account, with her accountant, with her mortgage broker, with the New York State tax authorities, with her and her son's doctors and with her retail creditors. She continued to have the telephone at that address as her only telephone number. Furthermore, petitioner's testimony concerning where her son stayed was totally evasive. We also are not impressed by the alleged lease of the property with petitioner's niece. While the niece may have stayed in the condominium, we do not believe that she had the right to exclusive use of the property or that petitioner and her son were not free to use the property if and when they desired. Thus, even if the property were rented at a fair rental value, the period that it was rented still would be a "personal *670 use" period under section 280A(d). In this regard, we note that the police report of the burglary, which took place in October, during which time the property was allegedly leased, makes no mention of any tenant or lease, and the property was described by petitioner in that report as her residence. In sum, even though the burden of proof is on respondent as to this issue, petitioner cannot avoid section 280A(a). The result is that the claimed deductions, other than for interest and taxes, are disallowed, and these deductions are allowed as itemized deductions on Schedule A. 2. Exemptions and Head of Household
Section 2(b)(1)(A) defines a head of household as, inter alia, an individual who is not married at the close of the taxable year and "maintains as his home a household which constitutes for more than one-half of such taxable year the principal place of abode, as a member of such household, of -- (i) a son". It should be noted that in dealing with this issue and with the rental loss issue, petitioner's arguments are inherently contradictory. With regard to the rental loss, she claims that her home was her mother's condominium. If this were true, she would not have *671 maintained her home as the principal place of abode of her son. But, as discussed above we have rejected the factual underpinning of that argument. We find that, while she may not have spent the nights at her townhouse, that property was her home, and Raul's principal place of abode. Accordingly, petitioner properly is classified as a head of household. Section 151(c) and (d) allows exemptions in the amount of $ 1,900 for dependents (as defined by section 152) of a taxpayer. Section 152(a)(1) and (4) provides that a son or mother may be a dependent, if the individual claimed as a dependent received "over one half" of his or her support from the taxpayer. In the case, however, of an individual defined in section 152, who is not a child of the taxpayer under the age of 19 or a student, the gross income of the individual must be less than the exemption amount. Sec 151(c)(1). In the case of Raul, there is no question that he qualifies as a dependent. He was petitioner's child, under age 19, and petitioner provided his total support. We next turn to the question whether petitioner is entitled to claim her mother as a dependent. For the purposes of section 151(c)(1), gross income *672 is defined by section 61 and does not include payments of exempt Social Security benefits. See sec. 1.151-2(a), Income Tax Regs. Payments of Social Security, however, are included in determining whether the individual received over one-half of his or her support from petitioner. Sec. 1.152-1(a)(2)(ii), Income Tax Regs. Mrs. Virzi received Social Security payments and, as we have found, $ 1,200 in income from looking after Raul, and we do not find that petitioner supplied over one-half of the support for her mother. Her mother paid her own condominium fees and other expenses, and petitioner did not provide any information as to what expenses of her mother she paid. Petitioner has not established that she is entitled to claim her mother as a dependent. 3. Child Care Credit
On her 1987 tax return petitioner claimed a child care credit in the amount of $ 552. Section 21 allows a credit for certain "employment related" expenses in caring for a dependent of a taxpayer under the age of 15. See sec. 21(b). When, during the taxable year, a child for whom the expenses are claimed reaches the age of 15, he or she ceases to qualify, and the expenses incurred upon which the credit *673 is based must be determined on a daily basis for that year. See sec. 1.44A-1(b)(3), Income Tax Regs. Raul reached the age of 15 on March 24, 1987. Petitioner claimed that she paid $ 1,200 to her mother and another $ 1,200 to a Vita Monaco for caring for her son when she was at work. We are dubious concerning the payments to Vita Monaco. Petitioner has no cancelled checks or other evidence that she paid this sum. Ms. Monaco did not testify, and petitioner did not explain the reason that, since her mother was available, Ms. Monaco was necessary. We, however, have accepted petitioner's testimony with respect to the payments to her mother. In the absence of other information, we assume that petitioner paid her mother $ 100 per month. Thus, the total qualifying expense would be for January ($ 100), February ($ 100) and 24/31 of March ($ 77) or $ 277. From this figure, the credit may be computed in the Rule 155 computation. 4. Miscellaneous Expenses
We are satisfied that petitioner paid the preparer of her 1986 income tax return $ 385 during 1987 and that this amount is properly deductible as a miscellaneous deduction, subject, however, to limitation under section 67. *674 The claimed deduction for work clothes, however, presents a different problem. While we do not doubt that nurses' uniforms and shoes may be deductible (e.g., Meier v. Commissioner, 2 T.C. 458 (1943); Harsaghy v. Commissioner, 2 T.C. 484 (1943)), petitioner presented scant evidence that she actually spent $ 1,213 on uniforms and special shoes. While she presented various statements from retail stores, there is nothing to indicate what was actually purchased. This is particularly troubling since the amount claimed appears to be large. Nonetheless, we are satisfied that she did incur some deductible expenses and, using our judgment, allow a deduction in the amount of $ 300. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). Again, however, the amount of this deduction is subject to the limitations of section 67. 5. Additions to Tax. Section 6653(a) provides for certain additions to tax in the case where any underpayment is due to negligence or an intentional disregard of the rules or regulations. Negligence is defined to include "any failure to make a reasonable attempt *675 to comply with the provisions of * * * [the Internal Revenue Code], and the term "disregard" includes any careless, reckless, or intentional disregard". Sec. 6653(a)(3). The additions to tax are 5 percent of the amount of the underpayment if "any part" of the underpayment is due to negligence (sec. 6653(a)(1)(A)) and an amount equal to 50 percent of the interest payable "with respect to the portion of such underpayment which is attributable to negligence" (sec. 6653(a)(1)(B)). As we have already noted with respect to the deficiency, as to the additions to tax raised in the notice of deficiency, petitioner bears the burden of proof; with respect to increased deficiency and additions to tax raised by respondent in the amended answer, however, respondent has the burden. Petitioner hired a certified public accountant to prepare her tax returns and relied on his advice. But, if she provided her accountant with information that was incorrect, she may not rely on his advice to deflect the additions to tax for negligence. There is little in the record to indicate what information she supplied to him. With respect to the portions of the underpayment due by claiming her mother as a dependent *676 and the excessive deduction claimed for work clothes, we find that petitioner has not carried her burden of showing that these items were not due to negligence. With regard to the child care credit, we find that she has carried that burden. As to the additions to tax raised in respondent's amended answer, respondent has not carried the burden of establishing that petitioner was negligent. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩