**AUSTIN et al. v. UNITED STATES.**

Circuit Court of Appeals, Fifth Circuit.
October 24, 1928.

No. 5336.

Arthur G. Powell, of Atlanta, Ga. (John D. Little, Marion Smith, and Max F. Goldstein, all of Atlanta, Ga., on the brief), for appellants.

C. P. Goree, Asst. U. S. Atty., of Atlanta, Ga. (Clint W. Hager, U. S. Atty., of Atlanta, Ga., on the brief), for the United States.

Before WALKER and BRYAN, Circuit Judges, and DAWKINS, District Judge.

BRYAN, Circuit Judge. This is a suit by the United States to collect income and excess-profit taxes claimed to be due by the Standard Coal Company for the years 1920 and 1921. The coal company was placed in liquidation in 1921, and after the payment of its creditors the sum of $11,000 was distributed to the stockholders. There were outstanding 200 shares of capital stock, of which appellant Austin owned 110 shares and Peyton H. Snook owned the remaining 90 shares. The suit was brought against Austin and Snook as stockholders who had received the corporate assets on liquidation. Snook having died, his executors were made parties defendant. At the beginning of the year 1920, the coal company was able to obtain only a very limited credit. There was a strike

in the coal fields, and the government had put the distribution of coal under control of the Fuel Administration. Coal was difficult to get, and the Fuel Administration allowed to wholesale dealers a maximum of 15 cents per ton difference between cost price and sale price.

The result was that the coal company was unable to pay the usual salaries to its officers and the other necessary expenses. Austin was president, and his credit was such that he could finance the situation. Snook was business manager, and D. B. Mitchell, though not a stockholder, was chief salesman. In this situation, the company on January 16, 1920, entered into formal written contracts with Austin, Snook, and Mitchell, whereby they agreed to conduct its business for that year and to receive as compensation one-third each of any net profits which might be earned; the company being relieved of the obligation to pay any salaries to them. Early in that year Austin contracted for coal at a low price, and shortly thereafter the Fuel Administration withdrew its control over the coal fields, with the result that the coal was sold at a much higher price, and during the year net profits of approximately $168,000 were realized. On the 1st of January, 1921, the favorable contract for the purchase of coal had expired and could not be renewed, and the contract of the company for net profits as salaries was continued until March of 1921, when its liquidation was begun.

The income tax returns of the coal company disclosed that it had made no profits, and that the entire net profits of its business had been paid out in salaries. Austin, Snook, and Mitchell paid income taxes upon the amounts so received by them as salaries. In December of 1923 the Commissioner of Internal Revenue assessed an additional tax against the coal company in the amount of $38,000 for 1920, and in January of 1925 assessed against it an additional tax of $1,150 for the fiscal year beginning in January and ending in March of 1921.

The District Judge acquitted appellants of any intention to misapply the funds of the corporation, or to defeat the collection of income or excess-profit taxes, but held that the salaries were unreasonable in amount and in violation of Revenue Act 1918, § 234(a) (1), 40 Stat. 1077, which authorizes as deductions only a reasonable allowance for salaries or other compensation for personal services. He sustained an allowance for salaries of $10,000 for each of the three parties under contract with the coal company, and

held the stockholders liable for the amounts which they had received upon liquidation of that company.

Under normal conditions, doubtless the contract for salaries would have been unreasonable, and it is to be subjected to careful scrutiny, because stockholders owning the entire capital stock of the corporation were parties to it. But the conditions were unusual. The corporation was financially unable to continue in business on account of lack of sufficient capital or credit, the strike in the coal fields, and the small profit allowed by the Fuel Administration. When the contract for salaries was entered into, the corporation was financially unable to continue in business. What it did was practically to give up its business because of its inability to carry it on. The reasonableness of the contract is to be viewed in the light of the circumstances that existed when it was made.

It is immaterial that in the actual working out of the contract contingent compensation may prove to be greater than the amount which ordinarily would be paid. See Regulation No. 65, art. 106, promulgated by the Treasury Department in construing the section of the Revenue Act in question. We agree with the District Judge that the evidence does not disclose any intention on the part of the stockholders to take advantage of their corporation, or to evade payment of income and excess profit-taxes. Austin and Snook owned all the stock of the coal company, and it made little difference to them whether they received the profits as salaries or as dividends. They paid income taxes on their salaries, and there would have been little, if any, difference if the corporation had itself paid the taxes and distributed the profits to them as dividends. There was no effort at concealment by the corporation, which included in its income returns the statement that it had paid out its entire net profits as salaries. Nor was there any effort at evasion by the stockholders, who included the salaries they had received. With full knowledge, the government accepted the income taxes upon the salaries. Though the fact that these payments were collected and are yet retained affords no defense to this suit, it does remove from the case any element of bad faith. Under the peculiar facts of this case, we are of opinion that the contract for salaries was reasonable, and that the corporation earned no profits during the period in question.

The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.