LEO KUBIK, TRANSFEREE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kubik v. Commissioner
Docket No. 5960-68.
United States Tax Court
T.C. Memo 1974-62; 1974 Tax Ct. Memo LEXIS 257; 33 T.C.M. (CCH) 302; T.C.M. (RIA) 74062; March 12, 1974, Filed. *257 1. Held: Missouri Valley Distributors, Inc., a valid taxable entity, must include in income certain amounts paid to it or on its behalf by a lessee pursuant to the terms of a ground lease. 2. Held: A portion of each of the underpayments of tax that Missouri Valley Distributors, Inc. was required to show on its Federal income tax returns for each of the taxable years in issue was due to fraud. 3.Held: Petitioner is liable as a transferee of the assets of Missouri Valley Distributors, Inc. for the deficiencies determined by respondent. 4. Held: The statutory period for assessment and collection of the liability of the petitioner as a transferee has not expired. Truman Clare, for the petitioner. Robert J. Murray, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined that petitioner is liable as the transferee of the assets of Missouri Valley Distributors, Inc. (sometimes referred to as the corporation) *259 pursuant to section 6901. [1] Petitioner's alleged liability relates to the following deficiencies that respondent has determined in the corporation's income tax: Year
Deficiency
Addition to Tax Section 6653(b) 1960
$6,984.32
$3,492.16
1961
6,321.15
3,160.58
The issues for decision are: (1) whether certain amounts paid to or on behalf of Missouri Valley Distributors, Inc., by Manhattan Corporation, pursuant to the terms of a ground lease, are includable in the income of Missouri Valley Distributors, Inc. for the years in issue; (2) whether a portion of each of the underpayments of tax that Missouri Valley Distributors, Inc., was required to report on its Federal income tax returns for each of the taxable years in issue was due to fraud; (3) whether petitioner is liable as a transferee of the assets of Missouri Valley Distributors, Inc., for the deficiencies determined by respondent; and (4) whether the statutory period for assessment and collection of the liability of the petitioner as a transferee of the corporation has expired. *260 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Leo Kubik was a resident of Carter Lake, Iowa, at the time he filed his petition in this proceeding. Missouri Valley Distributors, Inc., incorporated under the laws of the State of Iowa on June 3, 1957, did not file Federal corporate income tax returns for each of the taxable years 1960 and 1961. Petitioner was the president, treasurer, and sole owner of the transferor, which was incorporated for the purpose of operating a bottle club. Payment of an annual membership fee entitled a member to bring a bottle of liquor to the club premises and socialize with other members. The bottle club was operated in a building that was known as the Shrangi-La Club and that had been constructed prior to the formation of the corporation. Although the Shrangi-La Club was located on real estate in the State of Nebraska, the corporation was incorporated under Iowa law in order to create diversity of citizenship with law enforcement personnel of the State of Nebraska. It was thereby intended that disputes arising between the newly formed corporation and Nebraska law enforcement personnel would be subject to *261 the jurisdiction of a Federal district court. In an attempt to resolve one such dispute, Missouri Valley Distributors, Inc. filed a civil action in its own name to enjoin the padlocking of the club. In 1959 the charter of Missouri Valley Distributors, Inc. was cancelled by the State of Iowa for failure to file an annual report, but was reinstated on June 10, 1960. On April 10, 1962, the charter was again cancelled by the State of Iowa for failure to file an annual report. On August 4, 1960, Missouri Valley Distributors, Inc. agreed to lease certain real estate situated in the City of Omaha, Douglas County, Nebraska, to the Manhattan Corporation for a term of ninety-nine years at a monthly rental of $850. The lessee agreed to pay as advance rentals certain liens on the real estate in order to clear title, certain attorney's fees, a real estate commission and an amount of cash. During the taxable years 1960 and 1961 Manhattan Corporation made advance rental payments to or on behalf of Missouri Valley Distributors, Inc. in the amounts of $24,875.59 and $21,379.66, respectively, in order to pay the outstanding liens on the real estate in issue. Advance rental payments in the *262 total amount of $10,000 were also paid to Warren C. Schrempp, who represented Missouri Valley Distributors, Inc. as an attorney and agent in negotiating the lease. A portion of this amount was retained by Schrempp as compensation for services and the remainder was disposed of by him to or for the benefit of the petitioner. On February 6, 1967, Missouri Valley Distributors, Inc. transferred the real estate in issue to petitioner. The corporation received no consideration from petitioner for the transfer of this real estate, which was the transferor's only asset at that time and which had a fair market value of at least $200,000. Two buildings had previously been located on the property but, pursuant to the terms of the lease, had been relocated to other property belonging to the petitioner. On September 25, 1968, respondent sent to petitioner, by certified mail, a notice of transferee liability in which it was determined that for its taxable years 1960 and 1961, Missouri Valley Distributors, Inc. was liable for deficiencies in income tax in the amount of $19,958.21, including additions to tax under section 6653(b), plus interest as provided by law. No part of this deficiency *263 or the statutory interest has been paid, and the entire amount is still outstanding. By reason of the transfer of the real estate in issue to petitioner, the transferor was rendered, and is, insolvent and without assets with which to pay the deficiencies in income tax and additions to the tax due for the taxable years 1960 and 1961, plus statutory interest thereon. Because of the insolvency of the transferor from approximately February 6, 1967 to the present, any further efforts by respondent to collect from the transferor the deficiency in income tax and additions to the tax due from the transferor would be a useless gesture. On June 3, 1964, Special Agent Robert Collins and Revenue Agent David Crossan met with petitioner and his accountant, Edward Milder. At that meeting, petitioner stated that he knew Federal corporate returns were required to be filed and that he had discussed this matter with his attorney, Warren C. Schrempp, about a dozen times. Petitioner also stated at that meeting that he had engaged Edward Milder to prepare only his personal returns and that he had informed Edward Milder that the corporate returns would be filed by Warren C. Schrempp. On March 19, 1965, Special *264 Agent Collins, Revenue Agent Crossan and Group Supervisor Bud Cronk met with petitioner. Petitioner repeated the statements he had made at the June 3, 1964 meeting, but admitted that Warren C. Schrempp never had had access to the books and records of Missouri Valley Distributors, Inc. Petitioner stated that he had kept those records but could not produce them because they were lost, stolen or not available. Petitioner did not elaborate regarding the alleged thefts. Special Agent Collins attempted to determine whether the alleged thefts had in fact occurred by contacting the various local police departments. He was able to verify only one theft. The local newspaper account of this theft reported the items that petitioner had listed as missing; however, records of Missouri Valley Distributors, Inc. were not included in that list. The petitioner also told Revenue Agent Crossan at various times that the records in issue were possibly burned in a fire either at the Jet Drive-In, a business of petitioner, or at the Shangri-La Club. A fire at the Jet Drive-In occurred on May 13, 1962. A fire at the Shrangri-La Club occurred in 1969 or 1970. Warren C. Schrempp testified at trial *265 that he never maintained the books and records of Missouri Valley Distributors, Inc. He also stated that he had never discussed with petitioner the filing of corporate returns. The petitioner testified at trial that he never had discussed the filing of corporate returns with Warren C. Schrempp. He testified that Edward Milder kept the records of Missouri Valley Distributors, Inc. and that a procedure had been established whereby Edward Milder would pick up these records about every three months. Petitioner also testified that he had asked Edward Milder if Missouri Valley Distributors, Inc. was required to pay taxes if all its income had been paid out as expenses. The petitioner testified that Edward Milder told him he wouldn't have to pay taxes if the corporation didn't have any profits. During the month of December 1972, the petitioner and his wife, Regina M. Kubik, litigated Civil No. 3-884-W in the United States District Court for the Southern District of Iowa. That suit was for refund of personal income taxes plus additions to the tax that they had paid for the taxable years 1960, 1961 and 1963. In that proceeding, the court determined as a matter of law that Missouri *266 Valley Distributors, Inc. was a corporation for tax purposes during the taxable years 1960 and 1961. The determination of the court in Civil Docket No. 3-884-W has now become final. On August 11, 1966, petitioner as president and responsible officer of the transferor was charged in two counts of an indictment with willful failure to file corporate income tax returns for the transferor for the taxable years 1960 and 1961 in violation of section 7203. On November 8, 1967, petitioner entered a plea of nolo contendere to each count of the indictment referred to in the preceding requested finding, and on March 21, 1968, he was sentenced to pay a fine of $1,000 on each of the two counts or a total of $2,000. OPINION The first issue is whether the advance rentals paid to Missouri Valley Distributors, Inc. are includable in its gross income. The burden of proof with regard to this issue is on the petitioner. Initially, petitioner argued that these payments were not includable in the gross income of Missouri Valley Distributors, Inc. because that corporation was not a valid corporation for tax purposes. Petitioner asserts that the corporation was a "shell" corporation, that it never *267 functioned in a business capacity, and the petitioner was the real business operator. We do not agree with petitioner's argument. The corporation operated a bottle club, held title to real estate, leased real estate, received payments in its own name and prosecuted a civil action. We find that these business activities were of such a substantial nature that the corporation's validity as a separate entity must be recognized. Moline Properties, Inc. v. Commissioner, 319 U.S. 436 (1943); Paymer v. Commissioner, 150 F.2d 334 (C.A. 2, 1945). Furthermore, we conclude that the petitioner is collaterally estopped from denying the corporate existence of the transferor for the years in issue. When a suit is brought on a cause of action distinct from any action previously litigated, the doctrine of collateral estoppel will be invoked to prevent the relitigation of those matters in issue or points controverted, the determination of which was essential to the prior finding or verdict. Commissioner v. Sunnen, 333 U.S. 591 (1948); Harold S. Divine, 59 T.C. 152 (1972), *268 on appeal (C.A. 2, May 4, 1973). The doctrine is normally applicable when the issues and the parties in the two actions are the same. American Range Lines, Inc., 17 T.C. 764 (1951), remanded on other issues 200 F.2d 844 (C.A. 2, 1952). The petitioner is the same individual who commenced the prior civil suit for refund of taxes paid. The respondent is a party in privity with the United States of America, the defendant in that refund suit. The taxable years in issue are the same as those in issue in the refund suit. The determination by the district court that Missouri Valley Distributors, Inc. was a corporation for tax purposes was essential to the rendering of a final judgment in that case. The prior judicial determination has become final by reason of the petitioner's decision not to appeal that judgment. Accordingly, we conclude that the elements necessary to invoke the doctrine of collateral estoppel are present in the instant controversy. Citing Ruben v. Commissioner, 97 F.2d 926 (C.A. 8, 1938), petitioner further argues that the advance rentals do not constitute gross income to petitioner because they were used to pay debts or *269 obligations of Missouri Valley Distributors, Inc. Petitioner's argument is misguided. The issue is not whether the payments in issue are income to petitioner, but rather whether they are income to Missouri Valley Distributors, Inc. We hold that petitioner has failed to meet his burden of proof and that these payments are includable in the gross income of Missouri Valley Distributors, Inc. Section 61(a) (5); section 1.61-8(b), Income Tax Regs., and Renwick v. United States, 87 F.2d 123 (C.A. 7, 1936). The next issue for decision is whether a portion of each of the underpayments of tax that Missouri Valley Distributors, Inc. was required to show on its return was due to fraud. Section 6653(b) provides that fifty percent of the underpayment of tax shall be added to the tax if any part of the underpayment is due to fraud. The issue of fraud is one of fact to be determined upon a consideration of the entire record. Anson Beaver, 55 T.C. 85 (1970). Respondent bears the burden of proving fraud by clear and convincing evidence. Arlette Coat Co., 14 T.C. 751 (1950); *270 Abraham J. Muste, 35 T.C. 913 (1961). The addition to tax for fraud may be imposed when there has been a willful attempt to evade tax by means of a willful failure to file returns. Such a willful attempt to evade tax may be found from any conduct calculated to mislead or conceal. Anson Beaver, supra, and cases cited therein. Although willful failure to file does not in itself establish liability for additions to tax on account of fraud, such failure may properly be considered in connection with other facts in determining whether any deficiency or underpayment of tax is due to fraud. Anson Beaver, supra.
Upon a careful consideration of the entire record, we conclude that the respondent has proved fraud with intent to evade tax with regard to the taxable years in issue. As evidenced by his admissions to respondent's agents, the petitioner was aware of his responsibility to file Federal corporate income tax returns on behalf of his wholly owned corporation. Nonetheless, he failed to file returns for the corporation for the years 1960 and 1961 *271 and made no attempt to fulfill his responsibilities before his delinquency was discovered by representatives of the respondent. Furthermore, we find that petitioner's statements and conduct during meetings with respondent's agents and his testimony during the trial were calculated to mislead or conceal. During the trial petitioner demonstrated a tendency to respond to questions of his own counsel but to forget answers to questions propounded by the respondent. Petitioner has made several contradictory statements regarding whom he had engaged to prepare returns for the corporation. At the June 3, 1964 meeting with representatives of the respondent, petitioner, accompanied by his accountant, stated that he had engaged his attorney to prepare the corporate returns and that he had discussed this matter with his attorney about a dozen times. At trial, however, petitioner's attorney testified that he had never discussed the filing of corporate returns with the petitioner. Even petitioner admitted, at the meeting of March 19, 1965, that his attorney never had access to the corporate books and records. Furthermore, petitioner testified at trial that he had asked his accountant to *272 prepare those returns and that the accountant picked up the records of the corporation about every three months. Petitioner testified that he had been told by his accountant that the corporation would not have to pay taxes if it had not made a profit during the years in issue. Petitioner apparently contends that this statement by his accountant and his reliance thereon constitutes a sufficient explanation of why he failed to file returns.In view of petitioner's statement to revenue agents that he was aware of his obligation to file corporate returns, we do not believe that petitioner's alleged reliance on his accountant's statement regarding liability for tax is sufficient excuse for failing to file such returns. Petitioner also failed to produce the corporate books and records of Missouri Valley Distributors, Inc. to respondent's agents for their examination. Failure to supply requested records to internal revenue agents is a factor to be considered in determining whether the penalty for fraud should be assessed. Millikin v. Commissioner, 298 F.2d 830 (C.A. 4, 1962), *273 affirming a Memorandum Opinion of this Court. Petitioner's explanation for not supplying the requested records was that they had been stolen or burned. We are not persuaded by petitioner's explanation. Special Agent Collins was able to verify only one theft. At the time of that theft, however, petitioner failed to report that any corporate books and records had been stolen. The record establishes that fires occurred at two of petitioner's businesses, the Jet Drive-In and the Shangri-La Club. The fire at the Shangri-La Club, the location at which we possibly would expect records of the Missouri Valley Distributors, Inc. to be stored, did not occur until several years after the respondent's agents requested certain records. Assuming that the records had been kept at the Jet Drive-In, the records that might have been destroyed by fire in any event would have related to a maximum three month time period, in view of petitioner's testimony that his accountant picked up the records in issue every three months. The third issue for decision is whether petitioner is liable as a transferee for the assessed deficiencies, additions to tax and interest pursuant to section 6901. *274 The respondent has the burden of proving transferee liability. Section 6902(a). Whether a transferee is liable at law or equity for the transferor's unpaid tax is governed by state law. Commissioner v. Stern, 357 U.S. 39 (1958). With regard to the diversion of corporate funds, the provisions of Iowa Code Annotated, section 491.41 (1949) provide as follows: The diversion of the funds of the corporation to other objects than those mentioned in its articles and in the notice published, if any person be injured thereby, and the payment of dividends which leaves insufficient funds to meet the liabilities thereof, shall be such fraud as will subject those guilty thereof to the penalties of section 491.40; and such dividends, or their equivalent, in the hands of stockholders, shall be subject to such liabilities. * * * [Emphasis added.] This provision is operative with regard to a corporation's liability for taxes. Manning v. Ottumwa Auto Co., 210 Iowa 1182, 232 N.W. 501 (1930). *275 In that case, the Supreme Court of Iowa said: The statute of this state [the predecessor of section 491.41] prohibits the diversion of corporate funds to other things than those mentioned in its articles, and it is a well-settled rule of the common law that stockholders of a corporation cannot divide its property or assets among themselves without first paying the corporate debts. * * * By transferring its only asset to the petitioner, its sole owner, Missouri Valley Distributors, Inc. thereby rendered itself insolvent without having discharged its Federal income tax liability. Because the value of the property transferred to petitioner exceeded the amount of the transferor's liability, we conclude that the petitioner is liable as a transferee for the full amount of the unpaid taxes. Furthermore, we hold that the petitioner is liable for the penalties imposed pursuant to section 6653(b) and for interest pursuant to section 6601. Leo L. Lowy, 35 T.C. 393 (1960); Estate of Samuel Stein, 37 T.C. 945 (1962). The final issue for decision is whether the statutory period for assessment and collection of the deficiencies due from the petitioner as a *276 transferee has expired. Section 6901(c) provides that the statutory period in the case of an initial transferee is one year after the expiration of the period of limitation for assessment against the transferor. Because the transferor failed to file income tax returns for the years in issue and because part of the underpayments of tax were due to fraud, the tax may be assessed against the transferor at any time. Section 6501(c). Accordingly, the statutory period with regard to the petitioner-transferee has not expired. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise indicated. ↩