T.C. Memo. 1997-162


UNITED STATES TAX COURT


CORDES FINANCE CORPORATION, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 27258-93.                    Filed April 1, 1997.


<u>O. Christopher Meyers</u>, for petitioner.

<u>Gary Bloom</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

WHALEN, <u>Judge</u>:  Respondent determined the following deficiency and penalties with respect to petitioner's 1990 taxable year:

|  | Penalties | |
| Deficiency | Sec. 6662(a) | Sec. 6663(a) |
| $1,530,128 | $303,025.86 | $32,726.25 |

All section references are to the Internal Revenue Code as amended and in effect during 1990.  All Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions, the issues for decision are: (1) Whether respondent abused her discretion under section 446(b) in computing an adjustment to change petitioner's method of accounting for interest income from its automobile finance business; (2) whether petitioner is entitled to deduct a loss of $336,912 that was claimed on its amended return; (3) whether petitioner is liable for the civil fraud penalty under section 6663(a); and (4) whether petitioner is liable for the accuracy-related penalty under section 6662(a) due to a substantial understatement of income tax.

## FINDINGS OF FACT

Some of the facts have been stipulated by the parties. The stipulation of facts, the supplemental stipulation of facts, and the exhibits attached thereto are incorporated herein by this reference.

Petitioner was incorporated in Oklahoma on January 24, 1964, for the purpose of engaging in the business of automobile financing. At the time its petition was filed in this Court, petitioner's principal place of business was in Lawton, Oklahoma. Petitioner reported income and expenses for Federal income tax purposes on the basis of the accrual method of accounting and used the calendar year as its taxable year.

During 1990, Mr. Edmund J. Cordes was petitioner's president.  He oversaw all of petitioner's activities.

His education included high school and 2 years of college. He had studied accounting and business law in college and had received instruction in accounting while serving in the military.

During 1990, Mr. Cordes owned or controlled, directly or indirectly, all of the stock of petitioner and four other corporations:  Cordes Building Corp., Edmund Cordes, Inc., John Cordes, Inc., and Eddie Cordes, Inc.  These corporations were engaged in the business of selling and financing the sale of automobiles, except for Cordes Building Corp., which was engaged in the business of buying real property and constructing buildings for rental.

During 1990, petitioner's stock was owned by Mr. Cordes' wife, daughter, and son as follows:

| Owner | Shares |
|-------|--------|
| June J. Cordes | 334 |
| Jean Ann Cordes Rigby | 333 |
| Johnny J. Cordes | 333 |
| Total | 1,000 |

Mr. Cordes' automobile dealerships referred their customers to petitioner to provide financing for the purchase of automobiles.  If the customer was credit-

worthy, petitioner would issue a check to the dealership for the purchase price of the car, and the customer would issue a promissory note to petitioner under which the customer would agree to pay the principal amount of the note plus interest.  Payment of the customer's promissory note was secured by a mortgage on the automobile that was being financed.

Petitioner's employees maintained a ledger card for every lending transaction.  Each ledger card contained the customer's name, the vehicle identification number of the automobile that was being financed, the principal amount of the loan, and the total interest that would accrue during the life of the loan.  During the life of the loan, petitioner's employees would record the date and amount of each payment on the appropriate ledger card.  Petitioner did not maintain a list of all loans outstanding, and there was no way of knowing if a ledger card was lost or misplaced, unless the borrower subsequently made a payment on the loan.

Since its inception as a finance company in 1964, through and including the year in issue, petitioner has used the same method of accounting to record loan transactions on its books and records.  At the time petitioner made a loan, petitioner's employees debited petitioner's "Loan Receivable" account in an amount equal

to the sum of the principal amount of the loan and the total interest that would accrue over the life of the loan. They credited petitioner's "Cash" account in an amount equal to the principal of the loan and credited "Deferred Interest Income" in an amount equal to the interest to be paid by the customer over the term of the loan.

As mentioned above, after the loan was initially recorded, petitioner's employees entered the date and amount of each payment made by the customer on the ledger card for the loan. Under petitioner's method of accounting, however, petitioner did not accrue interest income while the loan was outstanding and the customer was making payments. Interest was not accrued until the principal amount of the loan was fully paid or petitioner repossessed the automobile securing the loan. At that time, petitioner recognized for book and tax purposes all of the interest that had been paid on the loan.

As of the end of 1990, petitioner had approximately 1,300 loans outstanding. According to petitioner's balance sheet at the end of 1990, there was a debit balance of $17,315,315.59 in petitioner's loan receivable account and a credit balance of $7,772,543 in petitioner's deferred interest income account. Thus, at the close of 1990, petitioner's balance sheet reflected interest of $7,772,543 to be realized after 1990 on petitioner's portfolio of

loans. The balances of petitioner's deferred interest account for the years 1984 through 1990, as reported on the balance sheets attached as Schedule L to petitioner's Federal income tax returns, are as follows:

| Year | Deferred Interest Per Schedule L |
|------|----------------------------------|
| 1984 | $5,045,821.33 |
| 1985 | 5,354,536.83 |
| 1986 | 5,799,020.10 |
| 1987 | 6,564,988.00 |
| 1988 | 7,569,183.00 |
| 1989 | 7,485,966.00 |
| 1990 | 7,772,543.00 |

Prior to respondent's audit, petitioner's employees had not reconciled the deferred interest income account with the customer ledger cards for approximately 20 years.

Mr. Robert Hinman, the managing principal of the Lawton office of an accounting firm, was responsible for the preparation of petitioner's tax returns from 1987 through the year in issue. At no time did Mr. Hinman examine petitioner's method of accounting for interest income to determine whether it was consistent with generally accepted accounting principles, the Internal Revenue Code, or applicable Treasury regulations.

Petitioner reported interest income for Federal income tax purposes for the years and in the amounts as follows:

| Year | Amount |
|------|--------|
| 1984 | $923,185.00 |
| 1985 | 1,007,549.50 |

| | |
|------|------------|
| 1986 | 1,132,417.73 |
| 1987 | 1,065,843.73 |
| 1988 | 995,475.00 |
| 1989 | 959,489.00 |
| 1990 | 855,861.00 |

During respondent's audit of petitioner's 1990 return, respondent's agent learned of petitioner's practice of recording interest income on its books and records only at the time a loan was paid off or at the time an automobile was repossessed.  In order to recompute petitioner's interest income for Federal tax purposes, the agent sought and obtained from petitioner's representatives the customer ledger cards for all loans outstanding at the end of 1990.  From the documents supplied by petitioner's representatives, including the ledger cards and certain loan documents that had been prepared at the time the loans were made, the agent computed the amount of deferred interest on each outstanding loan, the interest that should have been reported on that loan using the accrual method of accounting, and the amount of deferred interest with respect to that loan at the end of 1990.  The totals computed by the agent for all the loans outstanding are as follows:

| | |
|-----------------------------------------|----------------|
| Aggregate deferred interest<br>  per ledger cards | $6,175,575.00 |
| Interest earned<br>  through end of 1990 | 3,084,179.12 |
| Ending deferred interest | 3,091,395.88 |

In passing, we note the stipulation of the parties that the ending deferred interest as calculated by respondent in the amount of $3,091,395.88 should be increased by $437,800. We also note the stipulation that the earned interest as calculated by respondent in the amount of $3,084,170 should be increased by $295,200. In this opinion, we shall continue to refer to the amounts originally calculated by respondent and used in the notice of deficiency in order to avoid confusion.

Based upon the agent's analysis, respondent determined that petitioner's interest income had been understated in the amount of $3,084,179.12. Respondent also determined that petitioner's interest income had been understated by the difference between the aggregate deferred interest computed from the ledger cards as shown above, $6,175,575, and the deferred interest shown on petitioner's books and records, $7,772,543, or $1,596,968. Accordingly, respondent determined that petitioner's interest income had been understated in the aggregate amount of $4,681,147 (i.e., $3,084,179 plus $1,596,968).

During the audit, respondent's agent asked Mr. Cordes to provide certain information pertaining to petitioner's bank deposits at Citizens Bank in Lawton, Oklahoma. Mr. Cordes refused the agent's request. Accordingly, the agent issued an administrative summons to obtain the

information directly from Citizens Bank.  Pursuant to the summons, the bank produced petitioner's deposit records for the months of January, November, and December 1990.  After comparing petitioner's deposits during these 3 months with the cash amounts recorded in petitioner's cash receipts journal, the agent found that petitioner had omitted $127,889 of income from its 1990 return.  Respondent's agent found the following omitted amounts:

| Month | Omitted Amount |
|-------|----------------|
| January | $56,893 |
| November | 38,246 |
| December | 32,750 |
| Total | 127,889 |

Respondent's agent also found that the above-omitted income had been posted to a liability account, account 312, characterized as a shareholder loan account, as if petitioner's stockholders, members of the Cordes family, had advanced funds to petitioner.  Mr. Cordes had instructed petitioner's bookkeeper to post certain receipts as credits to account 312 and not as income.  This was true for bankruptcy collections with respect to debts that had been written off, late charge fees related to outstanding loans, and sundry other receipts.  Mr. Cordes and his family were able to draw upon account 312 to pay personal expenses.  Petitioner concedes that it omitted the above amounts from its 1990 return.

Sometime after respondent's agent brought the above-omitted amounts and certain disallowed deductions to Mr. Cordes' attention during the audit, petitioner filed Form 1120X, Amended U.S. Corporation Income Tax Return, with the Internal Revenue Service Center, Austin, Texas. On that return, petitioner reported additional gross receipts in the aggregate amount of $425,955, composed of the following items:

| | |
|---|---|
| Deposits to account No. 312 | $179,005.00 |
| Late charges & collection fees | 56,712.00 |
| Bankruptcy collections | 15,745.15 |
| American Express payments | 168,854.36 |
| Martin's Restaurant payments | 5,638.94 |
| Total | 425,955.45 |

The above items designated as payments to American Express and Martin's Restaurant are payments for personal expenses of Edmund J. Cordes and his family that were deducted on petitioner's 1990 return as "Repossession Costs".

Petitioner's amended return for 1990 claims a loss in the amount of $336,912 to offset the additional income reported on the return, and it makes reference to an adding machine tape to explain the nature of the loss. In substance, the adding machine tape states as follows:

Cordes Finance Corp.
12-31-90

| | |
|---|---|
| Cash in Bank | (31,446.70) |
| Notes Rec. | 9,542,772.59 |
| Notes Payable: | |
| E & June Cordes | (4,108,408.00) |
| Edmund Cordes, Inc | (600,000.00) |
| Bldg Corp | (100,000.00) |
| Capital Stock | (100,000.00) |
| Surplus | (4,000,000.00) |
| Retained Earnings | (939,829.92) |
| Loss | (336,912.03) |
| Interest Earned | 855,861.00 |
| Chg off & Rep Loss | 796,073.50 |
| Salaries | 77,750.00 |
| Payroll Taxes | 6,172.88 |
| Repo Exp | 266,424.55 |
| Legal & acctg | 17,489.33 |
| Postage | 4,205.00 |
| Misc | 2,374.77 |
| Taxes | 7,056.25 |
| Int. Paid | 2,772.60 |
| Group Ins. | 12,454.15 |
| | (0.00) |

The amount of the loss identified on the adding machine tape is the same as the "Net income per books" reported on Schedule M-1, Reconciliation of Income per Books With Income per Return, of petitioner's 1990 return. According to Schedule M-1, petitioner's loss of $336,912.03 was offset by income in the amount of $344,827.64 attributable to changing petitioner's method of accounting for bad debts from the reserve method to the specific charge method. The difference between those amounts, $7,915.61, is the taxable income reported by

petitioner for 1990. Thus, the loss of $336,912 claimed by petitioner on its amended return for 1990 had already been claimed on petitioner's return for 1990.

On May 5, 1992, petitioner issued a check to itself in the amount of $246,950.45, as reimbursement for the amounts paid from account 312 for the personal expenses referred to above. On September 14, 1992, petitioner issued a second check to itself in the amount of $179,005, as reimbursement for the receipts that had been misclassified as funds contributed to petitioner by Edmund J. Cordes and deposited to account 312 during 1990. Both of these checks, in the aggregate amount of $425,955.45, were charged to petitioner's account 312.

Respondent mailed a notice of deficiency pertaining to petitioner's 1990 return in which respondent determined the deficiency in income tax and penalties set out at the beginning of this opinion. In computing the subject deficiency, respondent made the following three adjustments to petitioner's 1990 return:

| | |
|---|---|
| Other income | $5,107,102 |
| Other deductions-- repossession costs | 175,104 |
| Bad debts | (736,331) |
| Total adjustments | 4,545,875 |

The adjustment labeled other income is composed of the following items:

Additional interest income     $3,084,179

|  |  |
|---|---|
| Reconciliation of deferred interest account | 1,596,968 |
| Additional income reported on amended return | 425,955 |
| Other income | 5,107,102 |

Parenthetically, we note that the tax deficiency determined by respondent was computed without taking into account the limitation in tax provided by section 481(b), and petitioner has not raised that as an issue in this case.

In reference to the additional income reported on petitioner's amended return, $425,955, respondent concedes that two of the items of additional income, the aggregate payments to American Express of $168,854.36 and the aggregate payments to Martin's Restaurant of $5,638.93, duplicate the "Repossession Costs" adjustment of $175,104 determined in the notice of deficiency. We note that the sum of the payments to American Express and Martin's Restaurant is $174,493.29, or $610.71 less than the adjustment for repossession costs. Petitioner concedes that the remaining items reported on its amended return in the aggregate amount of $251,462.15 are additional income.

OPINION

Change of Method of Accounting for Interest Income

The first issue for decision in this case involves petitioner's method of accounting for the interest earned on its portfolio of car loans. At the time each loan was

made, petitioner credited its deferred interest income account by the full amount of the interest to be earned over the term of the loan. However, petitioner did not debit that account or otherwise take interest income into account for book or tax purposes until the loan was paid off or it repossessed the automobile securing the loan. In effect, petitioner did not accrue interest with respect to any loan that was outstanding at the end of the year.

Respondent determined that petitioner's method of accounting for interest income did not clearly reflect income. Pursuant to respondent's authority under section 446(b), respondent further determined an increase in the income reported by petitioner in 1990 in the amount of $4,681,147 to effect a change in petitioner's method of accounting for interest.

As described above, respondent's adjustment is composed of two elements. First, based upon petitioner's records of all loans outstanding at the end of 1990, respondent determined that the interest earned on those loans through the end of 1990 is $3,084,179. Respondent computed this amount by taking interest into account ratably over the life of each of the subject loans. The parties have stipulated that the following is a summary of the earned interest on loans outstanding at the end of 1990 as computed by respondent:

| Year | Amount |
|------|--------|
| 1990 | $1,440,821 |
| 1989 | 923,274 |
| 1988 | 488,357 |
| 1987 | 179,881 |
| 1986 | 43,181 |
| 1985 | 8,470 |
| 1984 | 195 |
|      | 3,084,179 |

Petitioner's trial memorandum makes the following statement concerning this element of respondent's adjustment:

> Respondent's schedule indicates it totals $3,084,179, but it actually foots to $3,079,767. Aside from this small difference, petitioner agrees that if a change in accounting method is required here, this is the correct method to use and that it arrives at the correct starting point to compute 1990 income.

Petitioner did not specifically take issue with this element of respondent's adjustment, either at trial or in its post-trial briefs.

The second element of respondent's adjustment is based upon the discrepancy in petitioner's deferred interest account.  On the one hand, the balance sheet submitted with petitioner's 1990 return as Schedule L reports $7,772,543 as the balance of petitioner's deferred interest account at the end of 1990.  On the other hand, the aggregate deferred interest recorded on the ledger cards for all of the loans outstanding at the end of 1990 is $6,175,575.  Thus, petitioner's balance sheet reports

deferred interest of $1,596,968 more than the amount
recorded on petitioner's loan ledger cards.  In order to
reconcile this discrepancy, and to bring the balance of
petitioner's deferred interest account in line with the
ending balance computed by respondent from petitioner's
loan ledger cards, viz $3,091,395.88, respondent increased
petitioner's income in the amount of $1,596,968.  The
effect of both elements of respondent's adjustment on
petitioner's deferred interest account can be summarized
as follows:

| | |
|---|---|
| Deferred interest--ending<br>  balance per tax return | $7,772,543.00 |
| Less: Earned interest<br>  per respondent | 3,084,179.12 |
| Less: Amount to reconcile<br>  discrepancy in deferred<br>  interest amount | 1,596,968.00 |
| Deferred interest--ending<br>  balance per loan ledger cards | 3,091,395.88 |

Petitioner objects to the second element of
respondent's adjustment.  Petitioner's position is that
this element has the effect of requiring petitioner to
include in its income for 1990 interest that would
otherwise not accrue until after 1990.  Petitioner's
post-trial brief states as follows:

> The Commissioner's proposed method of accounting
> requires that any interest which has not already
> been recognized and which could possibly be
> earned at any time in the future on any contract

> outstanding at the end of 1990 be recognized as
> income in 1990. [Petitioner] objected to this
> proposed change in accounting because it required
> the inclusion in income in 1990 of interest on
> installment note payments that are not due at
> the end of 1990 and won't be due for months or
> even years in the future.

According to petitioner, respondent has, in effect, placed petitioner on an erroneous method of accounting to the extent that respondent computes petitioner's income by reference to unearned interest and has, thus, exceeded her authority to change petitioner's method of accounting under section 446(b).

We disagree. Neither the purpose nor the necessary effect of respondent's adjustment is to include in petitioner's gross income for 1990 interest that will accrue after 1990. As described above, petitioner treated interest as having been earned only when a loan was fully paid off or petitioner repossessed the automobile securing the loan and the loan was closed on petitioner's books. The change of accounting method that was made by respondent is to require interest to be ratably included in petitioner's income over the life of the loan. Based upon petitioner's records of loans outstanding at the end of 1990, respondent's agent found that interest in the amount of $3,084,179 had been earned through the end of 1990. Petitioner does not attack that computation.

Under petitioner's method of accounting, the amount of interest earned during the year is reflected as a decrease (debit) in the balance of the deferred interest account. The ending balance of the deferred interest account is nothing more than the interest that potentially will be earned on petitioner's portfolio of loans in the future. Therefore, it was necessary for respondent's agent to decrease the ending balance of petitioner's deferred interest account by the additional earned interest that she computed for the year. However, respondent's agent found that there was a discrepancy in the ending balance of petitioner's deferred interest account. According to petitioner's balance sheet, the balance was $7,772,543 but, according to petitioner's loan ledger cards, the balance was $6,175,575, or $1,596,968 less. Obviously, the same discrepancy is found after the account is reduced by the amount of additional earned interest computed by respondent, as shown in the following schedule:

|  | Petitioner | Respondent | Difference |
|---|---|---|---|
| Deferred interest--ending balance | $7,772,543 | $6,175,575 | $1,596,968 |
| Additional interest | (3,084,179) | (3,084,179) | -- |
| Deferred interest--corrected balance | 4,688,364 | 3,091,396 | 1,596,968 |

The above difference of $1,596,968 is the amount of petitioner's deferred interest that is not substantiated by petitioner's loan ledger cards. Respondent determined that this amount represents additional interest that petitioner

had failed to take into income. To overcome respondent's determination as to this accounting adjustment, petitioner bears a heavy burden of proof in that it must show that respondent's determination is arbitrary and unsupported by any basis in law. RCA Corp. v. United States, 664 F.2d 881, 886 (2d Cir. 1981); Prabel v. Commissioner, 91 T.C. 1101, 1112 (1988), affd. 882 F.2d 820 (3d Cir. 1989).

Petitioner's position that respondent's adjustment does not comport with the accrual method of accounting and is an erroneous method of accounting is based upon the premise that the above difference is interest that did not accrue in 1990 or in any prior year. However, petitioner has not introduced any evidence to rebut respondent's determination or to explain the difference. Contrary to the premise of petitioner's argument, the ledger cards for loans outstanding at the end of 1990 substantiate deferred interest of $1,596,968 less than the ending balance of the deferred interest account as shown on petitioner's balance sheet. We find that petitioner has not proven that respondent abused her discretion by determining that the difference described above is interest that accrued prior to 1991. Accordingly, we hereby sustain respondent's determination. See Prabel v. Commissioner, supra.

Before leaving this issue, we note that petitioner made a halfhearted attempt at trial to argue that its

method of accounting for interest income is an "appropriate" method of accounting. In support of that argument, petitioner noted that it had consistently used the method for over 30 years, and it alleged that historically it suffers an "unusually high incidence of repossessions". Petitioner did not prove the allegation of a high incidence of repossessions and appears to have abandoned the argument that its method of accounting was appropriate. Notwithstanding the abandonment of this argument, it is clear that petitioner's method of accounting for interest income did not clearly reflect income. Furthermore, it is well within respondent's discretion under section 446(b) to change a taxpayer's method of accounting which, although consistently used over a period of years, is erroneous and does not clearly reflect income. E.g., Electric & Neon, Inc. v. Commissioner, 56 T.C. 1324, 1333 (1971), affd. without published opinion 496 F.2d 876 (5th Cir. 1974).

Loss Deduction From Amended Return

The stipulation of facts states as follows:

As an offset to the amounts reported in its amended return as increases to taxable income for 1990, the petitioner claimed a loss in the amount of $336,912.00. Said claimed loss remains in dispute between the parties.

As discussed in the findings of fact, and as acknowledged by petitioner's accountant during his testimony at trial, the loss claimed on petitioner's amended return for 1990 duplicates the deductions claimed on petitioner's original return for the year. There is no basis on which petitioner is entitled to deduct the same amounts twice, and we reject petitioner's claim to deduct the loss, as reserved in the above-quoted stipulation.

Fraud Penalty

Respondent determined that petitioner fraudulently omitted income in the amount of $127,889 from its 1990 return and determined that petitioner is liable for a civil fraud penalty under section 6663 in the amount of $32,726.25. The omitted amounts arise from the fact that, upon Mr. Cordes' instructions, petitioner's bookkeeper recorded bankruptcy receipts, late charge fees, and other miscellaneous receipts as increases in account 312, a shareholder loan account, rather than as income. Although petitioner admits the omission of $127,889 from income, petitioner contends that it should not be subject to the fraud penalty for two reasons. First, petitioner contends that it acted in good faith and with reasonable cause because it "relied on the advice of [its] firm of Certified Public Accountants." Second, petitioner contends that

there is no underpayment of tax as defined by section 6664(a).

Section 6663(a) provides that if any part of an underpayment is due to fraud, there shall be added to the tax an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud. The Commissioner bears the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). If the Commissioner establishes that any portion of an underpayment is attributable to fraud, then the entire underpayment shall be treated as attributable to fraud, except as to any portion of the underpayment which the taxpayer establishes, by a preponderance of the evidence, is not attributable to fraud. Sec. 6663(b).

In this case, we construe respondent's statements at trial and in her post-trial briefs to concede that the only portion of the underpayment attributable to fraud is the portion attributable to the omission of $127,889, as determined in the notice of deficiency. Accordingly, we limit our discussion of the fraud penalty to the omission of income in the amount of $127,889.

To prove fraud, the Commissioner must show that an underpayment exists, and that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of

taxes. <u>Stoltzfus v. United States</u>, 398 F.2d 1002, 1004 (3d Cir. 1968); <u>Rowlee v. Commissioner</u>, 80 T.C. 1111, 1123 (1983). The issue is one of fact to be determined upon a consideration of the entire record. <u>Rowlee v. Commissioner</u>, <u>supra</u>; <u>Beaver v. Commissioner</u>, 55 T.C. 85, 92 (1970).

In view of the fact that fraudulent intent can seldom be established by direct proof of the taxpayer's intention, fraud is usually established by drawing inferences from the taxpayer's entire course of conduct. <u>Parks v. Commissioner</u>, 94 T.C. 654, 664 (1990); <u>Estate of Beck v. Commissioner</u>, 56 T.C. 297, 363 (1971). The courts have developed several indicia or "badges" of fraudulent behavior. These "badges of fraud" include conduct such as consistently understating income, <u>Estate of Upshaw v. Commissioner</u>, 416 F.2d 737 (7th Cir. 1969); <u>Parks v. Commissioner</u>, <u>supra</u>; failing to cooperate with tax authorities, <u>Zell v. Commissioner</u>, 763 F.2d 1139, 1146 (10th Cir. 1985), affg. T.C. Memo. 1984-152; and any other conduct likely to mislead or conceal, see <u>Estate of Schneider v. Commissioner</u>, 29 T.C. 940, 954-955 (1958). We note that since petitioner is a corporation, it can act only through its officers. <u>Federbush v. Commissioner</u>, 34 T.C. 740, 749 (1960), affd. 325 F.2d 1 (2d Cir. 1963).

In this case, respondent has proven that $127,889 of petitioner's income in 1990 was diverted to the personal

benefit and use of Mr. Cordes and his family. Petitioner concedes that it omitted gross receipts in the amount of $251,462.15 from its 1990 return, including the $127,889 with respect to which respondent determined the fraud penalty. Respondent has also proven that the omission of income in the amount of $127,889 was accomplished through a scheme designed by petitioner's president, Mr. Cordes, to divert petitioner's collection of late charges, bankruptcy receipts, and miscellaneous other receipts to shareholder loan account 312, and thereby to disguise the omitted income as loans or advances from Mr. Cordes and his family. Mr. Cordes instructed petitioner's bookkeeper to book the subject receipts to account 312, rather than to an income account.

Furthermore, during the audit, respondent's agent asked Mr. Cordes for petitioner's bank records in order to make a bank deposits analysis. Mr. Cordes refused the agent's request and forced the agent to obtain the records directly from the bank. Mr. Cordes' refusal to cooperate with respondent's agent suggests that he intended to conceal petitioner's omission of the income in account 312. Cf. Zell v. Commissioner, supra at 1146.

We reject petitioner's contention that it relied in good faith on the professional advice of its accountants. There is no evidence in the record that petitioner's outside accountants were aware of the omitted receipts or

that they advised petitioner or any of its employees to book the omitted receipts to account 312 rather than to an income account. This was done on the instructions of Mr. Cordes. Under these circumstances, petitioner's claim of reliance on its accountants is without merit. Moreover, even if petitioner's certified public accountants had given such advice with knowledge of all of the relevant facts, the advice would have been so clearly wrong that we could not find that petitioner relied upon the advice in good faith. See Laverne v. Commissioner, 94 T.C. 637, 652-653 (1990), affd. 956 F.2d 274 (9th Cir. 1992), affd. without published opinion sub nom. Cowles v. Commissioner, 949 F.2d 401 (10th Cir. 1991); Horn v. Commissioner, 90 T.C. 908, 942 (1988). Accordingly, we sustain respondent's determination of the fraud penalty under section 6663(a) as to the underpayment attributable to $127,889 of omitted income.

Finally, we reject petitioner's argument that the fraud penalty under section 6663(a) should not be imposed because there is no "underpayment". The term "underpayment" is defined by section 6664(a), as follows:

> the term "underpayment" means the amount by which any tax imposed by this title exceeds the excess of--
>
> > (1) the sum of--
> >
> > > (A) the amount shown as the tax by the taxpayer on his return, plus

(B) amounts not so shown previously assessed (or collected without assessment), over

(2) the amount of rebates made.

See also sec. 1.6664-2(a), Income Tax Regs. Petitioner argues that there is no underpayment because "(exclusive of the accounting change issue) there were actually more adjustments in Taxpayer's favor than adjustments which would result in additional tax." In effect, petitioner is arguing that for purposes of determining the amount of the underpayment, the "tax imposed", as that phrase is used in section 6664(a), does not include the tax attributable to the "accounting change issue". Petitioner cites no authority in support of that argument, and we reject it as contrary to the statute and the regulations. In this case, respondent has proven that there is an underpayment of tax and that a portion of the underpayment is attributable to fraud.

## Penalty for Substantial Understatement of Income Tax

Respondent determined that petitioner is liable for the accuracy-related penalty under section 6662(a) in the amount of $303,025.86 with respect to petitioner's 1990 taxable year. Respondent determined that the penalty applied to the entire underpayment, except for the portion attributable to the omission of $127,889 with respect to which respondent determined the fraud penalty.

In general, section 6662(a) imposes a penalty equal to 20 percent of the portion of an underpayment of tax which is attributable to one or more of the items listed in section 6662(b), including any substantial understatement of income tax. Sec. 6662(b)(2). For this purpose, an understatement of tax is defined as the excess of the amount of the tax which is required to be shown on the return for the taxable year over the amount of the tax which is shown on the return, reduced by any rebates. Sec. 6662(d)(2)(A). In the case of a corporation, an understatement is considered substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year, or $10,000. Sec. 6662(d)(1).

Petitioner argues that the accuracy-related penalty should not apply for the same two reasons that the fraud penalty should not be imposed. Petitioner argues, first, that it acted in good faith and with reasonable cause because it relied on the advice of its accountants and, second, that there is no underpayment of tax because "(exclusive of the accounting charge issue) there were actually more adjustments in Taxpayer's favor than adjustments which would result in additional tax." Petitioner does not cite the reasonable cause exception contained in section 6664(c)(1), but its argument that

it acted in good faith is consistent with an argument under that provision.

At the outset, we note that the deficiency determined in the notice of deficiency is based upon the following adjustments:

|  |  |
|---|---|
| Other income |  |
|   Earned interest | $3,084,179 |
|   Amount to reconcile<br>    discrepancy in deferred<br>    interest account | 1,596,968 |
|   Income reported on<br>    amended return | [1]425,955 |
| Other deductions |  |
|   Repossession costs | 175,104 |
| Bad debts | (736,331) |
|  | 4,545,875 |

[1]We note that respondent has conceded $174,494 of this amount and that $127,889 of this amount is subject to the fraud penalty.

In general, "The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances." Sec. 1.6664-4(b)(1), Income Tax Regs. In making this determination, the most important factor is the extent of the taxpayer's effort to assess its proper tax liability. Id. Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of the experience, knowledge and education of the taxpayer.

Id.  Reliance on a qualified professional such as an attorney or accountant may demonstrate reasonable cause and good faith, if the evidence shows that the taxpayer contacted a competent tax adviser and provided the adviser with all necessary and relevant information.  See Patin v. Commissioner, 88 T.C. 1086, 1130 (1987), affd. without published opinion 865 F.2d 1264 (5th Cir. 1989), affd. sub nom. Gomberg v. Commissioner, 868 F.2d 865 (6th Cir. 1989), affd. sub nom. Skeen v. Commissioner, 864 F.2d 93 (9th Cir. 1989), affd. without published opinion sub nom. Hatheway v. Commissioner, 856 F.2d 186 (4th Cir. 1988); Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991).

We acknowledge that petitioner had a longstanding relationship with the same firm of certified public accountants who had initially advised petitioner concerning the creation of its accounting system.  However, in this case, there is no evidence that the errors in petitioner's 1990 income tax return resulted from advice given to it by its certified public accountants.  Mr. Hinman, who assumed primary responsibility for petitioner's tax returns in 1987, testified that he did not review petitioner's method of accounting for interest.  Similarly, there is no evidence that he advised petitioner to omit income by booking receipts to account 312 or in any other fashion, or that he advised petitioner to deduct personal expenses

of Mr. Cordes as repossession costs.  Mr. Hinman was the only member of petitioner's firm of outside certified public accountants to testify at trial.  Moreover, none of petitioner's employees who testified at trial attributed the errors in petitioner's return to advice received from its accountants.  Therefore, we reject petitioner's contention that it acted with reasonable cause and in good faith.

We also reject petitioner's contention that the accuracy-related penalty should not be imposed because there was no underpayment.  As discussed above in connection with the fraud penalty, petitioner cites no authority for its contention that the underpayment in this case must be determined "exclusive of the accounting change issue".  The definition of underpayment contained in section 6664(a) and the regulations promulgated thereunder, section 1.6664-2(a), Income Tax Regs., requires otherwise.

In light of the foregoing and concessions by the parties,

Decision will be entered

under Rule 155.